UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SYLVESTER L NORWOOD,

      Plaintiff,

v.                                                                  Case No:  8:25-cv-573-JLB-AEP

PINELLAS COUNTY SCHOOL
BOARD, and MARK HUNT, an
individual,

      Defendants.

                                                 /

## **ORDER**

Plaintiff Sylvester L. Norwood sues Defendants Pinellas County School Board and Mark Hunt, alleging in his Second Amended Complaint employment discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 29 U.S.C. § 621, the Civil Rights Act of 1866, as amended, 42 U.S.C. §§ 1981, 1983.  (Doc. 36 at ¶ 1).  The Pinellas County School Board ("PCSB") and Mark Hunt have filed individual motions to dismiss.  (Docs. 39 & 40).  Mr. Norwood responded to both motions.  (Docs. 45 & 46).  And PCSB and Mr. Hunt replied.  (Docs. 50 & 51).  Upon careful review of the Second Amended Complaint, the parties' briefing, and the record, the Court finds that Mr. Hunt's motion to dismiss Counts V and VI of the Second Amended Complaint (Doc. 40) is due to be **GRANTED**, and PCSB's motion to dismiss Counts II and IV of the Second Amended Complaint (Doc. 39) is due to be **GRANTED in part**.

## BACKGROUND[1]

Plaintiff Sylvester Norwood, an African American born in 1958, was previously employed by Defendant PCSB as Director of Pinellas Technical College – St. Petersburg Campus.  (Doc. 36 at ¶¶ 7–8).  In or around January 2023, Mr. Norwood met with Defendant Mark Hunt—his direct supervisor and PCSB's Executive Director of Career, Technical & Adult Education—to discuss extending Mr. Norwood's employment beyond his scheduled Deferred Retirement Option Program ("DROP")[2] date of November 30, 2024.  (*Id.* at ¶ 17).  During that meeting, Mr. Hunt asked Mr. Norwood for a recommendation on who should replace him if his DROP date is not extended.  (*Id.* at ¶ 18).  Mr. Norwood named two white assistant directors as his preferred potential replacements, to which Mr. Hunt replied, "No, I need a Black replacement."  (*Id.* at ¶ 19).

In or around July 1, 2023, the maximum DROP period was extended by statutory amendment, from 60 months to 96 months.  (*Id.* at ¶¶ 10, 12).  This additional 36-month extension was made available to employees who had already started their 5-year DROP period.  (*Id.* at ¶ 11).  Mr. Norwood discussed extending

---

[1] "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).  Accordingly, this background section relies on the facts recited in the Second Amended Complaint.  (*See* Doc. 36).

[2] DROP "is a program under which an eligible member of the Florida Retirement System may elect to participate, deferring receipt of retirement benefits while continuing employment with his or her Florida Retirement System employer."  Fla. Stat § 121.091(13).  "Election to participate in DROP may be made at any time following the date on which the member first reaches his or her normal retirement date."  *Id.* § 121.091(13)(a)(2).

his DROP date under this new policy in a January 2024 mid-year evaluation meeting with Mr. Hunt.  (*Id.* at ¶¶ 21–22).  After Mr. Norwood indicated a strong desire to keep working beyond his DROP date, Mr. Hunt inquired as to whether Mr. Norwood would like to spend more time with his elderly mother in another state and alluded to her death as if it were imminent.  (*Id.* at ¶ 22).  Mr. Norwood was upset by Mr. Hunt's questioning and replied that his mother was in excellent shape and that he felt no need to step away from his job.  (*Id.* at ¶ 23).  Mr. Hunt then falsely informed Mr. Norwood that PCSB was not implementing the new proposed DROP policy.  (*Id.* at ¶ 24).  Mr. Norwood informed Mr. Hunt in February 2024 that PCSB had, in fact, extended the DROP dates for two other white employees pursuant to the proposed policy.  (*Id.* at ¶ 25).  In mid-May 2024, Mr. Norwood had his annual evaluation with Mr. Hunt.  (*Id.* at ¶ 27).  There, Mr. Hunt "loudly and vehemently" told Mr. Norwood three (3) times that he would not be extending Mr. Norwood's contract because he had played the "race card"—*i.e.*, referring to their February 2024 conversation in which Mr. Norwood mentioned that two white employees had their contracts extended.  (*Id.*).

Mr. Hunt, however, immediately displayed regret and suggested Mr. Norwood apply for an extension in August 2024.  (*Id.* at ¶ 32).  But Mr. Hunt then stated that "the decision [Hunt will make] in August [2024] will change [Mr. Norwood's] life or [Hunt's] forever," and declined to elaborate further.  (*Id.*) (first, second, and fourth alterations in original).  Ultimately, Mr. Norwood's DROP date was not extended.  (*Id.* at ¶ 15).

Mr. Norwood now sues PCSB and Mr. Hunt, alleging that they did not extend his DROP date despite receiving exemplary performance reviews. (*Id.* at ¶¶ 8, 15–16, 33). Mr. Norwood contends that PCSB did not extend his DROP date because of his (1) race (*id.* at ¶ 36) ("Count I"); (2) protected opposition to racial discrimination (*id.* at ¶ 43) ("Count III"); (3) age (*id.* at ¶ 39) ("Count II"); and (4) protected opposition to age discrimination (*id.* at ¶ 46) ("Count IV"). And he contends that Mr. Hunt (1) racially discriminated in violation of 42 U.S.C. §§ 1981 & 1983 ("Count VI") and (2) retaliated against Mr. Norwood's protected opposition to racial discrimination in violation of 42 U.S.C. §§ 1981 & 1983 ("Count V"). Plaintiff brings claims alleging employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA"); section 1981 of the Civil Rights Act of 1866; and 42 U.S.C. § 1983. (*Id.* at ¶ 1).

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a complaint to be dismissed for failure to state a claim upon which relief can be granted. To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). This plausibility standard is met when the plaintiff pleads enough factual content "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

4

When reviewing a motion to dismiss, courts must accept all factual allegations in a complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). Legal conclusions, however, "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. "[C]onclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

## DISCUSSION

PCSB and Mr. Hunt have filed motions to dismiss. (Docs. 39 & 40). Specifically, PCSB moves to dismiss Counts II and IV: (1) age discrimination in violation of the ADEA, 29 U.S.C. § 621 *et seq.* ("Count II") and (2) retaliation in violation of the ADEA ("Count IV"). (Doc. 36 at 7–9). Mr. Hunt moves to dismiss Counts V and VI against him. (Doc. 40). Those Counts include (1) retaliation in violation of 42 U.S.C. §§ 1981 & 1983 ("Count V") and (2) racial discrimination in violation of 42 U.S.C. §§ 1981 & 1983 ("Count VI"). (Doc. 36 at 10–11).

**I.    Mr. Norwood fails to state a claim against PCSB in Counts II and IV.**

In his Second Amended Complaint, Mr. Norwood claims in part that PCSB did not extend his DROP date because of his (1) age and (2) protected opposition to age discrimination. (*Id.* at ¶¶ 23, 39–41, 46). PCSB argues that Mr. Norwood fails to state a claim of age discrimination because he fails to allege that a substantially younger individual filled his position. (Doc. 39 at 6–7). And PCSB argues Mr. Norwood does not state a claim of retaliation because Mr. Norwood did not engage in statutorily protected activity. (*Id.* at 8–9). The Court agrees with PCSB.

5

To state a claim of age discrimination under the ADEA, Mr. Norwood must allege (1) he was at least 40 years old, (2) he was qualified to perform his job, (3) he was discharged or otherwise discriminated against, and (4) a similarly situated individual outside of his protected classification was treated more favorably or a person under the age of 40 filled his position. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000).

Here, Mr. Norwood fails to allege in Count II that a similarly situated younger individual was treated more favorably or that a person under the age of 40 filled his position. Plaintiff only alleges that "Hunt began inquiring, after Plaintiff indicated his strong desire to keep working beyond his DROP date, about whether Plaintiff would like to spend more time with his elderly mother in another state, and alluded to her death as if it were imminent." (Doc 36. at ¶ 22). He fails to allege that any younger individuals received DROP extensions. (*See id.* at ¶¶ 22–23, 38–41). And Mr. Norwood does not mention anywhere in the Second Amended Complaint whether his position was even filled after he left, much less the age of any replacement. (*See id.*). He presents the conclusory allegation that "PCSB did not extend Plaintiff's DROP date because of his age," without providing sufficient facts to support the claim. (*Id.* at ¶ 39). A conclusory allegation without sufficient factual support is not entitled to the assumption of truth and does not create a plausible claim upon which relief can be granted, as required to avoid dismissal under Rule 12(b)(6). *Iqbal*, 556 U.S. at 678–79. Thus, Count II is dismissed without prejudice.

And, to state a claim for retaliation under Title VII or the ADEA, Mr. Norwood must show (1) he engaged in statutorily protected expression, (2) he suffered an adverse employment action, and (3) the adverse action was causally related to the protected expression. *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002) (citation omitted).  To establish that a plaintiff engaged in statutorily protected expression, "a plaintiff must show that she 'had a good faith, reasonable belief that the employer was engaged in unlawful employment practices.'" *Id.* (quoting *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997)).  "[A] plaintiff's burden under this standard has both a subjective and an objective component. A plaintiff must not only show that he *subjectively* (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was *objectively* reasonable in light of the facts and record presented." *Little*, 103 F.3d at 960.

Furthermore, to be classified as statutorily protected, "the employee must still, at the very least, communicate her belief that discrimination is occurring to the employer, and cannot rely on the employer to infer that discrimination has occurred." *See Bailey v. DAS N. Am., Inc.*, 473 F. Supp. 3d 1310, 1332 (M.D. Ala. 2020) (citing *Demers v. Adams Homes, Inc.*, 321 F. App'x 847, 852 (11th Cir. 2009); *Jeronimus v. Polk County Opportunity Council, Inc.*, 145 F. App'x 319, 326 (11th Cir. 2005)).  A complaint regarding an employment practice "constitutes protected opposition only if the individual explicitly or implicitly communicates a belief that the practice constitutes unlawful employment discrimination." *See Bailey*, 473 F.

7

Supp. 3d at 1332 (citing *Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 276 (2009); *Murphy v. City of Aventura*, 383 F. App'x 915, 918 (11th Cir. 2010)).

Here, Mr. Norwood also fails to state a claim of retaliation because he does not allege that he engaged in expression protected by the ADEA. Plaintiff merely alleges that he was apparently "devastated by Hunt's questioning [about Mr. Norwood's elderly mother] and responded by informing Hunt that his mother was in excellent shape, to which Hunt responded with his own feelings of regret for not spending more time with his own mother." (Doc. 36 at ¶ 23). "Plaintiff repeated that his mother was doing well and he felt no need to step away from his job." (*Id.*). Plaintiff then asserts the conclusory allegation that "Plaintiff was thereby opposing Hunt's age discrimination." (*Id.*). But Plaintiff fails to allege that he communicated a belief that Mr. Hunt's comments were age discrimination. *See Bailey*, 473 F. Supp. 3d at 1332. Mr. Hunt's alleged statements about Mr. Norwood's elderly mother objectively have nothing to do with Mr. Norwood's age. (*See* Doc. 36 at ¶ 22). Simply responding that his mother was well and that he did not need to leave his job does not implicitly or explicitly communicate a belief on Mr. Norwood's part that Mr. Hunt's comments involved an act of age discrimination against Mr. Norwood. (*Id.* at ¶ 23). Therefore, Count IV is dismissed without prejudice.

8

## II.   Mr. Norwood's claims against Mr. Hunt in Counts V–VI fail as a matter of law.

Mr. Norwood sues Mr. Hunt in the Second Amended Complaint under section 1983, alleging that Mr. Hunt (1) caused and refused to extend Mr. Norwood's DROP date because of Mr. Norwood's opposition to Mr. Hunt's racial discrimination ("Count V") and (2) refused to extend Mr. Norwood's DROP date on the basis of race ("Count VI").  (*Id.* at 10–11).  Mr. Hunt argues that Mr. Norwood cannot state a claim of retaliation or race discrimination under § 1983 because Mr. Hunt is not the official decisionmaker on DROP extensions. That is, he is not responsible for extending Mr. Norwood's DROP date under Florida law.  (Doc. 40 at 10–12).   The Court agrees with Mr. Hunt.

Only a person who has "the power to make official decisions" can be held individually liable for racial discrimination and retaliation under section 1983. *See McCarthy v. City of Cordele, Georgia*, 111 F.4th 1141, 1147 (11th Cir. 2024) (quoting *Quinn v. Monroe County*, 330 F.3d 1320, 1326 (11th Cir. 2003) ("The 'decisionmaker' inquiry addresses who has the power to make official decisions and, thus, be held *individually* liable.")).  And "an official or formal decision-maker may often be identified . . . by examining the statutory authority of the official alleged to have made the decision." *Quinn*, 330 F.3d at 1328.

Participation in the DROP program is governed by Florida law.[3] "Upon deciding to participate in DROP, the member shall submit . . . [s]election of DROP participation and termination dates . . . .  The member may change the termination date . . . only with the written approval of the employer[.]"  Fla. Stat. § 121.091(13)(b)(2.b.).

> Florida law defines "employer" as
>
> any agency, branch, department, institution, university, institution of higher education, or board of the state, or any county agency, branch, department, board, **district school board**, municipality, metropolitan planning organization, or special district of the state which participates in the system for the benefit of certain of its employees, or a charter school or charter technical career center that participates as provided in [§] 121.051(2)(d).

Fla. Stat. § 121.021(10) (emphasis added).

Here, Mr. Hunt had no authority under Florida law to grant or deny DROP date extension requests.  Mr. Hunt was not Mr. Norwood's employer according to Florida law.  *See id.* (defining the district school board, here PCSB, as Mr. Norwood's employer).  Under Florida law, Mr. Norwood's true employer, PCSB, is the only entity that decides on a DROP date extension.  *See* Fla. Stat. § 121.091(13)(b)(2.b.) (requiring written approval from an *employer* to extend a DROP date).  Thus, oral comments allegedly made by Mr. Hunt alone would not be enough to constitute official decision-making that would make Mr. Hunt individually liable for racial discrimination or retaliation under section 1983.  Conclusory allegations

---

[3] The Court takes judicial notice of Florida statutory law as required by this case. *See Patel v. U.S. Att'y Gen.*, 971 F.3d 1258, 1264 n.3 (11th Cir. 2020) ("Federal courts . . . must take judicial notice of state law.").

by Plaintiff that Mr. Hunt caused or influenced the decision cannot establish individual liability either.  *See Quinn*, 330 F.3d at 1326, 1328 (stating that an "official decisionmaker" may be held individually liable if he had the authority "not merely to recommend [the employee]'s termination" but to "effectuate" it).  And because "a section 1981 claim . . . merge[s] into [a] section 1983 claim," Mr. Norwood's section 1981 claims against Mr. Hunt individually fall with his section 1983 claims.  *McCarthy*, 111 F.4th at 1147 (internal quotation marks omitted) (quoting *Busby v. City of Orlando*, 931 F.2d 764, 771–72 n.6 (11th Cir. 1991)).

As a matter of law, Mr. Norwood cannot state a claim of individual liability against Mr. Hunt for either racial discrimination or retaliation where PCSB is the official decisionmaker, not Mr. Hunt.  Consequently, Counts V and VI are dismissed with prejudice.

## CONCLUSION

Accordingly, it is **ORDERED**:

1. Defendant PCSB's Motion to Dismiss (Doc. 39) is **GRANTED in part and DENIED in part**.  The motion is granted to the extent that the Court dismisses Count II and IV and denied to the extent that the motion seeks dismissal with prejudice.

2. Defendant Mark Hunt's Motion to Dismiss (Doc. 40) is **GRANTED**.

3. Counts II and IV of Plaintiff's Second Amended Complaint (Doc. 36) are **DISMISSED without prejudice** and Counts V and VI are **DISMISSED with prejudice**.

4. Plaintiff shall have leave to file a third amended complaint addressing the shortcomings identified in this Order as to Counts II and IV within fourteen (14) days from the date of this Order.  No new claims shall be raised.

**ORDERED** in Tampa, Florida, on June 15, 2026.

_____
JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE

12